## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Randy D. Plasterer,<br><br>Appellant,<br><br>-v-<br><br>US Bank Trust National Association for VRMTG & William J. Birmingham,<br><br>Appellees. | 2:23-cv-6151<br>(NJC) |

## OPINION AND ORDER

NUSRAT J. CHOUDHURY, District Judge:

Appellant Randy D. Plasterer ("Plasterer") appeals from an August 4, 2023 Order entered by the United States Bankruptcy Court for the Eastern District of New York (Louis A. Scarcella, *Bankr. J.*) dismissing Plasterer's Chapter 11 bankruptcy case[1] pursuant to 11 U.S.C. § 1112(b) ("Dismissal Order"). (Not. Appeal, ECF No. 1; Dismissal Order, ECF No. 1-2.) For the following reasons, the Dismissal Order is affirmed.

## BACKGROUND

On July 5, 2022, Plasterer filed a voluntary petition for bankruptcy under Chapter 11 of the United States Bankruptcy Code. (ECF No. 2 at 10.)[2] On his bankruptcy petition, Plasterer

---

[1] This bankruptcy action is docketed as *In re Randy D. Plasterer*, 22-br-71632 (Bankr. E.D.N.Y.).

[2] Plasterer was initially represented by counsel when he filed for bankruptcy, but his counsel withdrew on November 1, 2022. (ECF No. 2-1 at 42.) Since that time, Plasterer has represented himself.

reported that he owned and resided in a residential property at 481 Deer Park Road, Dix Hills, New York 11746 (the "Dix Hills property"). (ECF No. 2 at 30.)

## I.    Mortgages Encumbering the Dix Hills Property

Plasterer originally executed a mortgage on the Dix Hills property in favor of Priceline Mortgage Company, which was recorded on August 4, 2004. (ECF No. 2-12 at 68, ¶ 6.) This mortgage was assigned to Wells Fargo Bank, National Association in 2014, then assigned to Specialized Loan Servicing LLC in 2018, and then assigned to U.S. Bank Trust National Association through Fay Servicing, LLC ("US Bank") in March 2023. (*Id.* ¶ 8; *see also* ECF No. 2-13 at 4–5, 25–27, 29–41; ECF No. 2-14 at 3.) At the time that Plasterer filed the petition, US Bank held a mortgage encumbering the Dix Hills property in the amount of $441,898. (ECF No. 2-1 at 7; *see also* ECF No. 2-8 at 24, ¶ 1.)[3] US Bank filed a proof of claim in the bankruptcy action for $443,562.79, which included the outstanding balance of the mortgage as well as all pre-petition arrears. (ECF No. 2-8 at 24, ¶ 1; ECF No. 2-12 at 68, ¶ 12.)

## II.    Monthly Operating Reports

Plasterer filed monthly operating reports for the thirteen months between and including July 2022, when his bankruptcy petition was initially filed, and July 2023.[4] These reports which provided detail about, among other things, the cash balance of Plasterer's estate at the beginning and end of the preceding month, any income Plasterer received or disbursements made in the

---

[3] In his property schedules filed on July 11, 2022, Plasterer reported that a second mortgage on the Dix Hills property was held by USAA Federal Savings Bank in the amount of $386,587. (ECF No. 2-1 at 7.) USAA Federal Savings Bank did not file a claim in Plasterer's chapter 11 case. (*See* Claims Register, *In re Randy D. Plasterer*, 22-br-71632 (Bankr. E.D.N.Y.).

[4] ECF No. 2-2 at 10, 45; ECF No. 2-3 at 2, 18, 49; ECF No. 2-4 at 13; ECF No. 2-8 at 28, 42; 2–9 at 23, 52; ECF No. 2-10 at 5, 25, 44, 59; ECF No. 2-11 at 12, 29; ECF No. 2-22 at 5, 20; ECF No. 2-23 at 12; ECF No. 2-24 at 8.

preceding month, and the status of Plasterer's assets and liabilities for the preceding month, and provided copies of Plasterer's bank statements for the preceding month.[5] In July 2022, Plasterer reported an income of $3,269 from a paycheck received on July 29, 2022. (ECF No. 2-8 at 28–37.)[6] In August 2022, Plasterer deposited $43,019.14 from a previous bank account into a debtor-in-possession bank account with Dime Community Bank ("Debtor-in-Possession account"). (ECF No. 2-9 at 50–51.)[7] Plasterer attested that he received no income at all from August 2022 through July 2023.[8] The Debtor-in-Possession account had a $100 monthly service charge and it was also used to pay the $250 quarterly fee for the United States Trustee, so by June 2023, that balance had diminished to $41,388.64. (ECF No. 2-11 at 42; *see also* ECF No. 2-9 at 16–18.) Plasterer also reported that he had home insurance with a $2,309 annual premium. (*See* ECF No. 2-10 at 21.)

### III.    Plan of Reorganization

On February 27, 2023, Plasterer submitted a reorganization plan for the court's approval. (ECF No. 2-5 at 5; Bankr. ECF No. 36.)[9] Plasterer proposed to pay US Bank $1,500 for "20-22

---

[5] *See supra* note 4.

[6] Plasterer initially filed a monthly operating statement for the monthly reporting period ending on August 31, 2022, in which he reported an income of $3,269. (ECF No. 2-4 at 13–14, 21.) Plasterer later filed an amended monthly operating report for that same reporting period, in which he crossed out the income amount, replaced it with "0," and wrote "1 pay ck only July 29, 2022 see prev. MOR." (ECF No. 2-9 at 23, 32.)

[7] *See also* Tr. Hr'g June 15, 2023 at 27:3–9, ECF No. 2-34.

[8] ECF No. 2-2 at 10–18, 45–53; ECF No. 2-3 at 1–9, 18–26, 48–52; ECF No. 2-4 at 1–4, 42–43; ECF No. 2-8 at 42-43; ECF No. 2-9 at 1–8, 23–32, 52–61; ECF No. 2-10 at 5–14, 25–34, 44–53, 59–64; ECF No. 2-11 at 1–4; 12–21, 29–38; ECF No. 2-22 at 4–12, 20–24; ECF No. 2-23 at 1–4; 12–20; ECF No. 2-24 at 8–16.

[9] Plasterer filed several documents on the docket that contained this plan and featured the same elements. (*See* ECF Nos. 2-5, 2-6, 2-7; ECF No. 2-8 at 1–23.)

months" and stated that "Debtors' income is of should be no concern" because "the funds for the expected duration (20-22 months)" of his proposed payment plan are "already in the Debtor-in-Possession account. (ECF No. 2-5 at 7–8, 12, 14.) [10] Plasterer did not file a disclosure statement in accordance with 11 U.S.C. § 1125 and Rule 3016(b) of the Federal Rules of Bankruptcy Procedure.

Plasterer proposed that the balance of the mortgage held by US Bank would be paid at some time after the proposed 20–22 months of repayment from the proceeds of a sale or from refinancing of the Dix Hills property. (ECF No. 2-5 at 12.) The plan did not specifically refer to the pre- and post-petition arrears but suggested that any sale could satisfy his debt to US Bank. (*See* ECF No. 2-5 at 11 (stating that the proceeds that would go to US Bank "may pay-off the entire mortgage owed to them, at the least, all the current past due owed")). Plasterer stated that he was "in discussions" with a religious temple neighboring the Dix Hills property by which he might be able to sell one acre of the property, and that the priest of the temple "has mentioned that they may also wish" to submit an offer to purchase the Dix Hills property. (*Id.* at 10.) Plasterer also stated that his spouse and her family both "ha[ve] money" and his spouse "will be inheriting a $2+ million apartment and already has full control of it and all the funds her in direct inheritance." (*Id.* at 11.) [11] As to the treatment of the creditors other than US Bank, Plasterer stated that "[t]here are no other Creditors that have any actions as they are ALL current or deferred by prior contracts." (*Id.* at 7.)

---

[10] Excerpts from Plasterer's brief are reproduced here exactly as they appear in the original. Unless otherwise noted, errors in spelling, punctuation or grammar will not be corrected or highlighted.

[11] Plasterer's spouse did not file for bankruptcy with Plasterer. (ECF No. 2 at 10.)

4

Plasterer later filed an amended plan of reorganization on April 17, 2023, which restated the elements of the previous plan: Plasterer would pay US Bank $1,500 for 20–22 months; the money for these payments would come from the Debtor-in-Possession account, which had a balance of approximately $42,000; Plasterer was in discussions with the religious temple neighboring the Dix Hills property over a possible sale of one acre of the property; and a priest at the temple had "mentioned that they may also wish to purchaser" the Dix Hills property. (ECF No. 2-12 at 11–12, 14.) The Amended plan restated that Plasterer's family, his spouse, and his spouse's family, all "ha[ve] money" and that his spouse "will be inheriting a $2+ million apartment." (ECF No. 2-12 at 14–15.) Because the plans contained the same elements, this opinion will refer to both the initial and amended plans collectively as one plan.

## IV.  US Bank's Objection to Plan

On March 16, 2023, US Bank filed an objection to the plan. (ECF No. 2-8 at 24.) US Bank objected on several grounds. First, US Bank objected to the plan on procedural grounds, given that Plasterer had failed to file a disclosure statement and failed to classify US Bank's claim. (*Id.*) Second, US Bank argued that the proposal was "speculative" to the extent that it called for a buyout of the Dix Hills property at the end of the proposed payment period. (*Id.* at 24–25.) Third, US Bank argued that the plan violated 11 U.S.C. § 1123(b)(5), which prohibits a plan's modification of a residential mortgage, because Plasterer's plan would alter the terms of US Bank's lien on the Dix Hills property, a residential property. (*Id.* at 25.)

Plasterer filed a response to US Bank's objection to his plan, which appears to be the same document as the amended plan. (*See* ECF No. 2-12 at 1–10; *see also* Bankr. ECF No. 60.)

V.      **March 23, 2023 Status Conference**

On March 23, 2023, the bankruptcy court held a status conference. (Tr. Hr'g Mar. 23, 2023, ECF No. 2-32.) At this conference, Plasterer informed the court that "U.S. Bank Trust is the only impaired creditor at all, secured, unsecured, anything. All other creditors are up to date." (*Id.* at 6:23–25.) The court adjourned the conference to April 20, 2023 to permit US Bank and Plasterer to discuss possible loss mitigation options for the mortgage debt. (*Id.* at 11–12, 19–20.)

VI.     **US Bank's April 17, 2023 Status Letter Regarding Loss Mitigation Options and Post-Petition Arrears**

On April 17, 2023, US Bank filed a letter to the bankruptcy court informing the court that Plasterer had applied for a mortgage modification, repayment plan, or other loss mitigation options with respect to the US Bank mortgage five times since August 2020. (ECF No. 2-12 at 24.) Each time, US Bank determined that Plasterer did not qualify for any of its loss mitigation options. (*Id.*) US Bank attached to its letter the five denial letters, the most recent of which was dated January 2023, and stated that Plasterer was ineligible for a mortgage modification because his debt-to-income ratio exceeded 40%. (*Id.*; *see also* ECF No. 2-12 at 28, 31, 34, 39, 45.)

The letter also informed the court that Plasterer had not made any payments to US Bank that were required under the loan between the time that he filed the bankruptcy petition and April 17, 2023, and that the total post-petition delinquency was $23,978.02. (ECF No. 2-12 at 24; *see also* ECF No. 2-12 at 69, ¶ 18.)

VII.    **April 20, 2023 Hearing**

On April 20, 2023, the court held a hearing on Plasterer's reorganization plan. (Tr. Hr'g Apr. 20, 2023, ECF No. 2-33.) US Bank and Plasterer confirmed that they had discussed a possible settlement, but that the parties were unable to reach an agreement. (*Id.* at 1–17.) Counsel for US Bank stated that while US Bank approached these negotiations in good faith, the terms

Plasterer proposed were "unacceptable" for the following reasons: (1) the loan had been

delinquent for approximately a decade, (2) Plasterer had not made any post-petition payments

towards the loan despite stating that he is willing and able to pay, and (3) Plasterer had not filed a

"proper disclosure statement" or a "proper plan." (*Id.* at 16–17.) William K. Harrington, the

United States Trustee (the "Trustee"), reiterated that Plasterer's operating reports "do not show

that Mr. Plasterer is earning any income." (*Id.* at 18.) The court again adjourned the hearing so

that Plasterer could continue to negotiate with US Bank and so that the Trustee could file any

motion to dismiss the case or convert this Chapter 11 case to a case under Chapter 7. (*Id.* at 20.)

## VIII.   Motion to Dismiss or Convert Case

On April 21, 2023, the Trustee filed a motion to dismiss or convert the case to a Chapter

7 case. (ECF No. 2-12 at 49.) In this motion, the Trustee argued that Plasterer's monthly

operating reports showed a single August 2022 deposit in the Debtor-in-Possession account—the

$43,019 deposit following the closing of his pre-petition bank account—and that every other

monthly report showed that Plasterer had been unable to generate income and was not meeting

his financial obligations. (*Id.* at 54.) Given these facts and that Plasterer did not qualify for

mortgage assistance, the Trustee argued that there was cause to dismiss the case under 11 U.S.C.

§ 1112(b) because Plasterer did not have sufficient income to pay his creditors or meet his

current obligations, and that there did not appear to be a prospect for a successful reorganization

in his case. (*Id.*)

The Trustee also argued that there was cause for dismissal because Plasterer's plan for

reorganization was not confirmable in that US Bank, a secured creditor, would not vote in favor

of the plan, the plan impermissibly modified a mortgage on residential property, and the plan's

proposed sale was speculative. (*Id.* at 60–61.)

Also on April 21, 2023, US Bank filed a motion for relief from the automatic stay under 11 U.S.C. § 362(d)(2) to permit it to proceed with a foreclosure sale of the Dix Hills property. (ECF No. 2-12 at 65; ECF No. 2-14 at 22.)[12] In support of this motion, counsel for US Bank filed an affidavit attesting that Plasterer had "defaulted on making post-petition mortgage payments" owed to US Bank under the terms of the loan, and that as of April 21, 2023, Plasterer owed $21,307.64 in post-petition arrears. (*Id.* at 68–69.)

On May 15, 2023, Plasterer filed a motion for an extension of time to file a plan of reorganization, citing 11 U.S.C. § 1121(d)(1). (Bankr. ECF No. 66.)

## IX.    June 15, 2023 Hearing

On June 15, 2023, the bankruptcy court held a hearing regarding, among other things, the Trustee's motion to convert or dismiss Plasterer's Chapter 11 case. (Tr. Hr'g, June 15, 2023 at 4:20–22, ECF No. 2-34.) The bankruptcy court dismissed Plasterer's motion seeking an extension of time to file a plan and disclosure statement because it was untimely under 11 U.S.C. § 1121(d)(1) and because under 11 U.S.C. § 1121(a), the debtor may file a plan at any time during the course of a Chapter 11 bankruptcy case. (*Id.* at 10:2–7, 11:5–11.) The bankruptcy court stated that the case had come down "to a single issue. And that is how does [Mr. Plasterer] now deal with" US Bank. (*Id.* at 24:13–14.) The court adjourned any hearing on US Bank's motion to lift the stay and the Trustee's motion to dismiss the case to give the parties further time to negotiate. (*Id.* at 35.)

---

[12] Before Plasterer filed the Chapter 11 petition in this case, US Bank had previously obtained a judgment of foreclosure and sale of the Dix Hills property. (*See* Tr. Hr'g Aug. 3, 2023 at 40:1–5.)

## X.    Plasterer's Opposition to the Trustee's Dismissal Motion and Objection to US Bank's Claim

On July 31, 2023, Plasterer filed an opposition to the Trustee's motion to dismiss or convert the case, making four points. (ECF No. 2-20 at 28.) First, Plasterer stated that his monthly operating reports were up to date and included supporting documentation in the form of bank statements, and that these reports "have not changed in any unexpected way other than bank charges or professional fees, such as check printing, etc. as predicted." (*Id.*) He did not deny that these reports showed that he had not received any income since July 2022. (*Id.*) Second, Plasterer reported that he had been negotiating with US Bank and requested more time for negotiations. (*Id.*) Third, Plasterer also reported that there had "been no diminution or weakening of the property" because it had recently been appraised at $1,107,000, which "indicat[ed] significant equity." (*Id.* at 29.) Fourth, Plasterer argued that "the continuation of the Chapter 11 case is in the best interests of all parties involved," although he did not provide any basis for that conclusion. (*Id.*)

On August 2, 2023, Plasterer filed a motion objecting to US Bank's proof of claim. (ECF No. 2-25 at 1.)

## XI.    August 3, 2023 Hearing on the Trustee's Motion to Dismiss or Convert the Case

On August 3, 2023, the bankruptcy court held a continued hearing regarding the Trustee's motion to convert or dismiss Plasterer's Chapter 11 case. (Tr. Hr'g Aug. 3, 2023, ECF No. 2-35.) The court did not hear argument on Plasterer's motion objecting US Bank's claim, given that it had been filed the previous day. (*Id.* at 5:24–25, 6:1–7.) Counsel for US Bank reported to the bankruptcy court that despite US Bank and Plasterer's discussions since the last conference, they had not reached an agreement as to Plasterer's repayment of the mortgage debt and arrears owed to US Bank. (*Id.* at 10:19–24.) The Trustee informed the court that as of the

date of the hearing, the post-petition arrears had grown to $32,000. (*Id.* at 33:12–13.) After hearing all of the parties' arguments and carefully considering the record in the case, including, among other things, the monthly operating reports, Plasterer's plan, the Trustee's motion to dismiss, and Plasterer's response to that motion, the court found that there was cause to dismiss the case under 11 U.S.C. § 1112(b). (*Id.* at 36–37, 45–46.) The court found that "[m]ortgage debt [was] continuing to increase" because there were "no payments being made," and "there [was] no income in [Plasterer's] operating reports." (*Id.* at 37:7–12.) The court also found that US Bank, which was the only impaired creditor, had the right to vote on Plasterer's plan and that if it voted to reject the plan, the plan could not be confirmed under 11 U.S.C § 1129(a), which requires consent. (*Id.* at 37:18–25, 38:1.) The court also questioned whether the plan was feasible or could comply with other requirements of 11 U.S.C. § 1129(a), regardless of whether US Bank voted against it. (*Id.* at 38:7–21.) Additionally, the court found that the plan could not be approved as a non-consensual plan under 11 U.S.C. § 1129(b), because that would require "at least one impaired class voting in favor of [the] plan," and the plan provided for a single impaired class of creditors, US Bank, which had stated that it would not vote in favor of the plan. (*Id.* at 37:15–17, 38:1–6.) Finally, the court found that the two limited exceptions to dismissing the case under 11 U.S.C. § 1112(b) did not apply because "[n]othing has been specifically identified to the court that granting this relief [of] dismissal would not be in the best interest of creditors of the estate." (*Id.* at 45:18–23.) US Bank confirmed that it would advocate for a dismissal rather than a conversion. (*Id.* at 47:6–10.)

Because the court found cause to dismiss, the court dismissed the case without prejudice and dismissed as moot the remaining pending motions, including US Bank's motion to vacate

the stay. (*Id.* at 47.) On August 4, 2023, the bankruptcy court issued a written order dismissing

the case without prejudice under 11 U.S.C. § 1112(b). (Dismissal Order, ECF No. 1-2.)

**XII.    Appeal**

On August 15, 2023, Plasterer filed a notice of appeal from the bankruptcy court's order

dismissing the Chapter 11 case. (Not. Appeal.) Plasterer file his appellate brief on October 30,

2023. (Plasterer's Br., ECF No. 5.) The Trustee, as the appellee, filed his brief on November 14,

2023. (Tr.'s Br., ECF No. 6.) The Trustee also filed an appendix in support of his brief, which

attached exhibits that were already included in the bankruptcy record. (ECF No. 7.)

**JURISDICTION**

This Court has jurisdiction to hear this appeal from a bankruptcy court order under 28

U.S.C. § 158, which provides that "[t]he district courts of the United States shall have

jurisdiction to hear appeals . . . from final judgments, orders, and decrees . . . of bankruptcy

judges."

**STANDARDS OF REVIEW**

On appeal, a district court reviews a bankruptcy court's findings of fact for clear error, its

conclusions of law de novo, and "[m]atters left to the [bankruptcy] court's discretion . . . for

abuse of discretion." *Liberty Towers Realty, LLC v. Richmond Liberty, LLC*, 569 B.R. 534, 538

(E.D.N.Y. 2017), *aff'd*, 734 F. App'x 68 (2d Cir. 2018). A "clear error occurs only when the

reviewing court on the entire evidence is left with the definite and firm conviction that a mistake

has been committed." *United States v. Williams*, 254 F.3d 44, 46 (2d Cir. 2001) (quotation marks

and citations omitted). An abuse of discretion occurs when a court's decision "rests on an error

of law (such as application of the wrong legal principle) or a clearly erroneous factual finding,

or . . . its decision—though not necessarily the product of a legal error or a clearly erroneous

11

factual finding—cannot be located within the range of permissible decisions." *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 169 (2d Cir. 2001).

The dismissal of a Chapter 11 petition for cause under Section 1112(b) is reviewed for abuse of discretion. *See In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1312 (2d Cir. 1997) (reviewing for abuse of discretion bankruptcy court's dismissal of bankruptcy petition for bad faith); *Fuschi v. Bank of New York Mellon Tr. Co., N.A.*, No. 22-cv-332, 2024 WL 4326942, at *3 (S.D.N.Y. Sept. 27, 2024); *cf. In re Lynch*, 795 F. App'x 57, 59–60 (2d Cir. 2020) (reviewing for abuse of discretion bankruptcy court order converting a Chapter 11 case to a Chapter 7 case).

This Court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree," or it may "remand with instructions for further proceedings." *Heilbron v. Plaza*, No. 20-cv-312, 2021 WL 1062034, at *2 (E.D.N.Y. Mar. 19, 2021); *see also* 28 U.S.C. § 2106. The court "may affirm on any grounds for which there is a record sufficient to permit conclusions of law." *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 268 (2d Cir. 2023) (alterations omitted). This includes "grounds not relied upon by the bankruptcy court." *In re Stallmer*, 792 F. App'x 856, 857 (2d Cir. 2019) (citing *Chelsey v. Union Carbide Corp.*, 927 F.2d 60, 68 (2d Cir. 1991) (brackets omitted).

## DISCUSSION

### I.    Legal Standards Under Section 1112(b) for Dismissal or Conversion of a Chapter 11 Bankruptcy Case

Under 11 U.S.C. § 1112(b), a bankruptcy court is required in certain circumstances to either dismiss a Chapter 11 bankruptcy case or to convert it into a Chapter 7 case, depending on which "is in the best interest of the creditors and the estate." 11 U.S.C. § 1112(b)(1). Dismissal

or conversion is required, "on request of a party in interest, and after notice and a hearing," where the court finds there is "cause" to do so. *Id.*[13]

Section 1112(b)(4) sets forth a non-exhaustive list of reasons that constitute "cause" to dismiss or convert a Chapter 11 bankruptcy case under Section 1112(b). *In re C-TC 9th Ave. P'ship*, 113 F.3d at 1311 (noting that Section 1112(b) provides a list that "is illustrative, not exhaustive"); *In re 461 7th Ave. Mkt., Inc.*, No. 20-3555, 2021 WL 5917775, at *2 (2d Cir. Dec. 15, 2021). The bankruptcy court "is free to consider other factors" as well. *See also In re Adamo*, No. 14-73640, 2016 WL 859349, at *10 (Bankr. E.D.N.Y. Mar. 4, 2016). A bankruptcy court "has wide discretion to determine if 'cause' exists and how to ultimately adjudicate the case." *Lippman v. Big Six Towers, Inc.*, No. 20-cv-973, 2021 WL 1784312, at *3 (E.D.N.Y. May 5, 2021); *see also In re Adamo*, 2016 WL 859349, at *9–10 (collecting cases).

## II.     The Bankruptcy Court Did Not Err in Finding Cause to Dismiss the Bankruptcy Action Under Section 1112(b)(4).

Here, the bankruptcy court's dismissal of Plasterer's Chapter 11 case for cause was not an abuse of discretion. The record provides ample support for the court's finding that there was a

---

[13] There are a few limited exceptions to dismissal or conversion where the bankruptcy court finds cause. These exceptions are found in Section 1112(c), which is applicable to debtors who are farmers or certain kinds of corporations, and Section 1112(b)(2), which applies where (1) "the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate," and (2) "the debtor or any other party in interest establishes" the requirements of 11 U.S.C. § 1112(b)(2)(A) and (B). 11 U.S.C § 1112(b)(2), (c). None of these exceptions are raised by the parties to this appeal. (*See* Plasterer's Br.; Tr.'s Br.)

"substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," which is an explicit basis for finding cause to dismiss.

Under Section 1112(b)(4)(A), cause exists for dismissal where there is "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A). When determining whether this type of cause for dismissal exists, "a court must make a full evaluation of the present condition of the estate, not merely look at the Debtor's financial statements." *In re First*, No. 22-11020, 2022 WL 17723916, at *4 (Bankr. S.D.N.Y. Dec. 15, 2022). The first requirement, "the existence of a continuing loss to or diminution of the estate[,] can be found where a Debtor consistently suffers a post-petition negative cash flow and is unable to pay current expenses." *Id.* As to the second requirement, "rehabilitation means to put back in good condition and reestablish on a sound basis, and implies establishing a cash flow from which its current obligations can be met." *Id.* (quotation marks omitted). Courts have found that a debtor had no likelihood of rehabilitation where the debtor's proposed plan of reorganization is not feasible. *See Lynch*, 795 F. App'x at 60 (finding that the bankruptcy court did not abuse its discretion in finding cause under Section 1112(b)(4)(A) where, among other things, the proposed reorganization plan was not confirmable); *In re Roman Cath. Diocese of Rockville Ctr., New York*, No. 20-br-12345, 2023 WL 4833307, at *1 (Bankr. S.D.N.Y. July 18, 2023) (considering "'rehabilitation' to mean the Debtor's proposal of a workable Chapter 11 plan 'within a reasonable period of time'" although recognizing that in the early stages of a Chapter 11 case, the court may find a likelihood of

rehabilitation even without this element where the debtor is making progress towards rehabilitation).

Upon reviewing the record in this appeal, the bankruptcy court did not abuse its discretion in determining that there was "substantial or continuing loss to or diminution of the estate." 11 U.S.C. § 1112(b)(4)(A). The record shows that Plasterer's estate suffered from a "post-petition negative cash flow" and that Plasterer was "unable to pay current expenses" from which the bankruptcy court could find that there was a continuing loss to or diminution of the estate. *In re First*, 2022 WL 17723916, at *4; *see also Lippman*, 2021 WL 1784312, at *4. Plasterer's monthly operating reports for the months of August 2022 through July 2023 showed that Plasterer received no income during those months.[14] Plasterer had about $43,019.14 in the Debtor-in-Possession account when he filed his Chapter 11 petition, but without income, that balance had steadily reduced due to quarterly fees of the United States Trustee and bank fees, resulting in a balance of $41,386.64 by July 2023. (ECF No. 2-9 at 51; ECF No. 2-24 at 3.) Further, counsel for US Bank attested that Plasterer had failed to make any post-petition mortgage payments, and that by the time the case was dismissed in August 2023, the post-petition arrears had grown to $32,000 even as there remained pre-petition arrears and the outstanding balance on the mortgage. (Tr. Hr'g Aug. 3, 2023 at 33:12–13.) During this time, the Dix Hills property continued to accrue real estate taxes and Plasterer continued to insure the Dix Hills property with a policy that had a $2,309 annual premium. (*See* ECF No. 2-10 at 21.) Thus,

---

[14] ECF No. 2-2 at 10–18, 45–53; ECF No. 2-3 at 1–9, 18–26, 48–52; ECF No. 2-4 at 1–4, 42–43; ECF No. 2-8 at 42-43; ECF No. 2-9 at 1–8, 23–32, 52–61; ECF No. 2-10 at 5–14, 25–34, 44–53, 59–64; ECF No. 2-11 at 1–4; 12–21, 29–38; ECF No. 2-22 at 4–12, 20–24; ECF No. 2-23 at 1–4; 12–20; ECF No. 2-24 at 8–16.

the record shows that, for one year after the initiation of the Chapter 11 petition, administrative costs, taxes, and arrears continued to accrue, and Plasterer had not been able to pay those accruing obligations. *See In re O'Hara*, 835 F. App'x 253, 256 (9th Cir. 2020) (finding that the bankruptcy court did not abuse its discretion in finding "substantial or continuing loss" where the debtor's "final three monthly operating reports showed a negative cash flow"); *see also Lippman*, 2021 WL 1784312, at *4.

Turning to the second prong required for a Section 1112(b)(4)(A) dismissal, the record supports the bankruptcy court's conclusion that Plasterer had no likelihood of rehabilitation for several reasons. First, as discussed above, the record did not reflect that Plasterer had income to meet his financial obligations. *In re First*, 2022 WL 17723916, at *4; *Lippman*, 2021 WL 1784312, at *4.

Second, Plasterer failed to set forth a plan of reorganization that was feasible and not speculative. *See In re O'Hara*, 835 F. App'x at 256 (finding that the record revealed "the absence of a reasonable likelihood of reconciliation" where the debtor had proposed an "infeasible plan of reorganization"); *In re Lynch*, 795 F. App'x at 60. Plasterer's plan was contingent on a speculative outcome—that the Dix Hills property would be purchased at a price that would resolve the remaining balance on the mortgage and any outstanding arrears. The plan did not actually include provisions for a sale. (ECF No. 2-5 at 5–12.) Instead, Plasterer merely stated that a religious temple neighboring the Dix Hills property "may . . . wish" to submit an offer to purchase the property. (*Id.* at 10.) Plasterer did not provide any evidence that he had retained a broker or taken other steps to sell the Dix Hills property and, other than the speculative sale and the balance within the Debtor-in-Possession account, Plasterer did not set forth a plan for how he would fund his proposed reorganization plan. While Plasterer asserted that his spouse

16

"has money, her family has money" and that she "will be inheriting a $2+ million apartment and already has full control of it and all the funds her in direct inheritance," the plan did not provide that Plasterer would use anything other than funds in the Debtor-in-Possession account and any proceeds from the sale of the Dix Hills property to pay his debt to US Bank. (ECF No. 2-5 at 11.) Further, the record reflects that Plasterer never provided proof of these vague claims or indicated that he had been provided access to any of these sources of money to pay down his debt to US Bank.

Because the bankruptcy court did not abuse its discretion in finding that cause existed to dismiss the case under Section 1112(b)(4)(A), the bankruptcy court was required to dismiss the case under 11 U.S.C. § 1112(b)(1).[15]

### III.    Plasterer's Arguments on Appeal

Plasterer argues that the bankruptcy court should have considered several other factors relating to his progress through the case and his proposed plan, including: his "Good Faith Efforts to Rectify Previous Errors Made by Former Counsel, in compliance with 11 U.S.C. § 1129(a)(3);" "the Impact of the Previous Attorney's Withdrawal and Failure to Perform Necessary Legal Tasks;"[16] his "Demonstrated Ability to Fulfill the Requirements of the Chapter 11 Process;" his "Ongoing Negotiations with Creditors and Efforts to Reach a Consensual Plan

---

[15] The Trustee argues that, in the alternative, there was cause to dismiss the case because Plasterer's plan violated 11 U.S.C. §§ 1129(a)(10) and 1123(b)(5) and therefore could not be confirmed. (Tr.'s Br. at 22.) Because I find that the bankruptcy court did not abuse its discretion in finding cause for dismissal under Section 1112(b)(4)(A), I do not reach these arguments.

[16] Plasterer also attached to his appellate brief a grievance committee complaint form regarding his previous counsel's handling of his underlying Chapter 11 case, which he apparently filed on September 26, 2023. (ECF No. 5 at 5.)

of Reorganization"; and his "Good Faith Effort to Pay All Debts in Full and the Potential

Negative Impact on Creditors" under 11 U.S.C. § 1129(a)(7).[17] (Plasterer's Br. at 1–2.)

To the extent that Plasterer argues that the court abused its discretion in finding cause to

dismiss the case under Section 1112(b)(4)(A), Plasterer does not point to any evidence in the

record that contradicts the bankruptcy court's factual findings, including findings about the

contents of his plan, the fact that Plasterer had no income during the first year of the Chapter 11

case, or the fact that he had failed to pay any post-petition arrears on the US Bank mortgage. (*See

id*.) None of the bankruptcy court's factual findings were clearly erroneous. *Williams*, 254 F.3d

at 46. Thus, even liberally construing Plasterer's arguments, I do not find that the bankruptcy

court abused its discretion in finding cause to dismiss the petition under Section 1112(b)(4)(A)

for the reasons previously discussed. *See Zervos*, 252 F.3d at 169; *see also supra* Discussion

Section II.

Nor does Plasterer attempt to argue that a statutory exception to dismissal applies under

11 U.S.C. § 1112(b) or (c), or that the court should have converted the case to a Chapter 7 case

---

[17] 11 U.S.C. § 1129(a)(7) states that:

> The court shall confirm a plan only if the following requirements are met: . . . (7)
> With respect to each impaired class of claims or interests—(A) each holder of a
> claim or interest of such class—(i) has accepted the plan; or (ii) will receive or
> retain under the plan on account of such claim or interest property of a value, as
> of the effective date of the plan, that is not less than the amount that such holder
> would so receive or retain if the debtor were liquidated under chapter 7 of this
> title on such date; or (B) if section 1111(b)(2) of this title applies to the claims of
> such class, each holder of a claim of such class will receive or retain under the
> plan on account of such claim property of a value, as of the effective date of the
> plan, that is not less than the value of such holder's interest in the estate's interest
> in the property that secures such claims.

11 U.S.C. § 1129(a)(7).

rather than dismissing it. (*See* Plasterer's Br. at 1–2.) Plasterer's arguments do not compel a different outcome because, under Section 1112(b), once the bankruptcy court found cause to dismiss the case under Section 1112(b)(4)(A), the court was mandated to convert or dismiss the case, whichever was in the best interests of the creditors and the estate, unless a statutory exception applied. 11 U.S.C. § 1112(b)(1) ("[O]n request of a party in interest, and after notice and a hearing, the court *shall* convert . . . or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . . .") (emphasis added).

Plasterer also raises challenges to two of the bankruptcy court's other rulings: the court's denial of his motion for an extension of time to file his reorganization plan and the court's failure to consider his objection to US Bank's claim. (Plasterer's Br. at 1.) While Plasterer's notice of appeal only stated that he was appealing from the Dismissal Order, not other orders issued in the underlying bankruptcy action (ECF No. 2-25 at 8), courts will "read a pro se appellant's appeal from an order closing the case as constituting an appeal from all prior orders" so long as there is no prejudice to an appellee. *Elliott v. City of Hartford*, 823 F.3d 170, 173 (2d Cir. 2016). "[A] notice of appeal filed by a *pro se* litigant must be viewed liberally, and not every technical defect in a notice of appeal constitutes a jurisdictional defect." *Id.* The Trustee is not prejudiced by a broad reading of the notice of appeal in this case because Plasterer's statement of the case, filed along with the notice of appeal, sets forth both of these challenges. (ECF No. 1 at 6–7.) Accordingly, under *Elliott*, I have jurisdiction to consider Plasterer's arguments about these two bankruptcy court rulings.

First, Plasterer argues that the court erred in denying his motion for an extension of time to file his reorganization plan because Rule 9006(b) of the Federal Rules of Bankruptcy Procedure "allows for extensions of time, and the Appellant's compliance should have precluded

19

the hearing of other motions." (Plasterer's Br. at 1.) Plasterer filed his motion for an extension of

time to file a reorganization plan and disclosure statement pursuant to 11 U.S.C. § 1121(d)(1)

("Section 1121(d)(1)") on May 15, 2023. (Bankr. ECF No. 66.) At the June 15, 2023 hearing, the

bankruptcy court dismissed Plasterer's motion for an extension of time because under 11 U.S.C.

§ 1121(d)(1), Plasterer's motion was untimely, and under 11 U.S.C. § 1121(a) ("Section

1121(a)"), a debtor may file a plan at any time during the course of a Chapter 11 case. (Tr. Hr'g

Aug. 3, 2023 at 10:2–7, 11:5–11.)

I find no error in the court's ruling dismissing Plasterer's motion for an extension of time

to file his reorganization plan. As the bankruptcy court recognized, under Section 1121(a), the

debtor in a Chapter 11 bankruptcy action "may file a plan with a petition commencing a

voluntary case, or at any time in a voluntary case or an involuntary case." 11 U.S.C. § 1121(a).

Section 1121(b) provides that for the first 120 days "after the date of the order for relief under

this chapter," the only person who may file a plan for reorganization is the debtor. 11 U.S.C.

§ 1121(b). An "order for relief" in a voluntary Chapter 11 case is the commencement of the case,

or the filing of the bankruptcy petition. 11 U.S.C. § 301; *In re Bell*, 225 F.3d 203, 209 (2d Cir.

2000). Upon the request of a party in interest made *during that 120-day period*, the court may,

for cause, increase or decrease that 120-day period of time during which the debtor is the only

person who may file a reorganization plan. 11 U.S.C. § 1121(d)(1).

The petition, or "order for relief," in Plasterer's voluntary Chapter 11 case was filed on

July 5, 2022. (ECF No. 2 at 1.) Thus, the 120-day time period for Plasterer to file a

reorganization plan expired on November 2, 2022. To the extent Plasterer's motion sought to

extend that deadline, the court properly denied Plasterer's motion as untimely under Section

1121(d)(1) because it was made on May 15, 2023—more than six months after the deadline for

requesting an extension. Alternatively, the court properly denied Plasterer's motion for an extension of time to file a plan as moot given that Plasterer could file a plan at any time during the case under Section 1121(a).[18]

Plasterer also argued that "[t]he Court Recognized the Flawed Proof of Notice of Claim by the Only Creditor" and that the court should have considered Plasterer's objection to the authenticity of the chain of custody of the mortgage on the Dix Hills property. (Plasterer's Br. at 1.) I understand this argument to refer to Plasterer's filing of a motion objecting to US Bank's claim in this case, on the afternoon before the court's August 3, 2023 hearing, and the court's decision not to hear argument on the motion during that hearing given the short notice to the court and all parties. (Tr. Hr'g Aug 3, 2023 at 5–6.)

Under the Federal Rules of Bankruptcy Procedure, an objection to a claim may be brought at any time, so long as it is "filed and served *at least 30 days* before any scheduled hearing on the objection or any deadline for the claimant to request a hearing." Fed. R. Bankr. P. 3007(a) ("Bankruptcy Rule 3007(a)") (emphasis supplied). The bankruptcy court did not err in declining to hear Plasterer's objection to the US Bank's claim in this case at the August 3, 2023 hearing because Plasterer had not filed and served the motion at least 30 days before the hearing, as required under Bankruptcy Rule 3007(a).

---

[18] Despite denying Plasterer's motion for an extension of time, the court adjourned hearings in this case multiple times to give Plasterer an opportunity to try and negotiate a potential settlement or a feasible reorganization plan with US Bank. (*See* Tr. Hr'g Apr. 20, 2023 at 20; Tr. Hr'g June 15, 2023.)

**CONCLUSION**

For the reasons set forth above, Plasterer's appeal is denied, and the bankruptcy court's order dismissing Plasterer's Chapter 11 case (ECF No. 1-2) is affirmed. The Clerk of Court is respectfully directed to enter judgment and close this case.

Dated:  Central Islip, New York
       January 14, 2025

                                 */s/ Nusrat J. Choudhury*
                                 NUSRAT J. CHOUDHURY
                                 United States District Judge